### In re CONSTABLE TERMINAL CORPORATION, Debtor.

### Constable Terminal Corporation, Plaintiff,

### v.

### City of Bayonne, New Jersey, Defendant.

### No. Civ.A. 99–2037 NHP.

United States District Court, D. New Jersey.

March 21, 2000.

---

John R. Wenzke, Lasser Hochman, LLC, Roseland, NJ, for appellant, Constable Terminal Corporation.

Kevin Hanly, Hanly & Ryglicki, Edgewater, NJ, for appellee, City of Bayonne.

POLITAN, District Judge.

Dear Counsel:

This matter comes before the Court on the appeal by Constable Terminal Corporation from the Order of Bankruptcy Judge Novalyn L. Winfield dated July 28, 1999 precluding the Bankruptcy Court from granting tax refund requests that are untimely under state law. For the reasons stated herein, the Order of Bankruptcy Judge Novalyn L. Winfield dated July 28, 1999 precluding the Bankruptcy Court from granting tax refund requests that are untimely under state law is **AFFIRMED.** Accordingly, this case is **CLOSED.**

## STATEMENT OF FACTS & PROCEDURAL HISTORY

From 1984 through August 5, 1997, appellant, debtor Constable Terminal Corporation (hereinafter "Constable"), operated a bulk liquid storage business of non-petroleum liquid products. The majority of Constable's operations were conducted on its property located at Block 482, Lots 10 & 11, City of Bayonne.

On April 3, 1996, Constable filed a voluntary petition under Chapter 11 of the United States Bankruptcy Code.

On October 4, 1996, appellee, the City of Bayonne (hereinafter "Bayonne"), filed a Proof of Claim asserting that Constable owed real property taxes in the sum of $241,255.24.

On November 6, 1996, Constable commenced its adversary proceeding against Bayonne seeking a determination of the amount of both the pre-petition claim for taxes due and to determine the proper assessment of taxes for the post-petition years 1995 through 1997.

Constable maintained the position that, beginning in the late 1980s, its financial condition was such that it could not timely pay the taxes assessed by Bayonne. Although Constable paid some quarterly tax payments for the years 1991 through 1994, Constable alleged that it was not able to pay the full amount due. Pursuant to Bayonne's books and records, Constable paid all taxes assessed for the tax years 1991 through 1994 on Lot 10 and all of the taxes for 1991 through 1993 on Lot 11. Additionally, Constable paid approximately one-half of the taxes assessed for 1994 on Lot 11 and the first quarter of the taxes owed on Lot 10 for 1995. Constable asserted that its inability to bring its payments current effectively precluded it from pursuing tax appeals in the New Jersey state court. Arguing that the property was over-assessed between 1991 and 1994, Constable sought a refund for the tax overpayments. It was undisputed that prior to commencing the adversary proceeding, Constable had not filed a tax appeal or request for refund for the pre-petition years 1991 through 1994.

On December 24, 1997, Bayonne filed a Cross–Motion for Partial Summary Judgment seeking a determination that Constable was not entitled to a refund for real property taxes already paid to Bayonne for the years 1991 through 1994. Constable filed its opposition and the Bankruptcy Court heard oral argument in April 1998.

The Honorable Novalyn L. Winfield, United States Bankruptcy Judge of the United States Bankruptcy Court for the District of New Jersey, rendered a written opinion on July 28, 1998 wherein the Judge granted Bayonne's Cross–Motion for Partial Summary Judgment. *See Constable Terminal Corp. v. City of Bayonne (In re Constable)*, 222 B.R. 734 (D.N.J.1998).

The remaining issues in the case were settled between Constable and Bayonne and a Stipulation of Settlement and Consent Order reflecting the agreement was entered into on March 25, 1999. The Settlement Order specifically preserves Constable's right to pursue an appeal of the Order granting Bayonne's Cross–Motion for Partial Summary Judgment.

Thereafter, Constable filed a Notice of Appeal.

## DISCUSSION

### I. Standard of Review

■ The parties agree that the subject matter of this appeal pertains only to questions of law. A district court exercises plenary review in connection with an appeal from an order of a bankruptcy court involving questions of law. See *In re Brown*, 951 F.2d 564, 567 (3d Cir.1991). See also *In re Indian Palms Assocs., Ltd.*, 61 F.3d 197, 203 (3d Cir.1995).

### II. 11 U.S.C. § 505(a)(2)(B)

Constable contends that Bankruptcy Court Judge Winfield erred in the interpretation and application of 11 U.S.C. § 505(a)(2)(B) by holding that Constable was barred from seeking a refund, credit or offset for real property taxes previously paid to Bayonne.

11 U.S.C. § 505(a) provides:

(a)(1) Except as provided in paragraph (2) of this subsection, the court may determine the amount or legality of any tax, any fine or penalty relating to a tax, or any addition to tax, whether or not previously assessed, whether or not paid, and whether or not contested before and adjudicated by a judicial or administrative tribunal of competent jurisdiction.

(2) The court may not so determine—

(A) the amount or legality of a tax, fine, penalty, or addition to tax if such amount or legality was contested before and adjudicated by a judicial or administrative tribunal of competent jurisdiction before the commencement of the case under this title; or

(B) any right of the estate to a tax refund, before the earlier of—

(i) 120 days after the trustee properly requests such refund from the governmental unit from which such refund is claimed; or

(ii) a determination by such governmental unit of such request.

■ This appeal primarily involves the interpretation of 11 U.S.C. § 505(a)(2)(B). Essentially, that provision provides that a Court may not determine any right of a bankruptcy estate to a tax refund before the earlier of 120 days after the trustee "properly requests" such a refund from the governmental unit from which refund is claimed or a determination by such governmental unit is made. The meaning attributed to the phrase "properly requests" in 11 U.S.C. § 505(a)(2)(B)(i) is therefore critical.

Bayonne asserts that the phrase "properly requests" requires that a debtor or trustee has requested or requests the refund or credit within the time period established by state law. According to Bayonne, N.J.S.A. § 54:3–21 provides the statutory mechanism for obtaining a refund and, pursuant to that statute, a taxpayer must file a tax appeal on or before April 1st of the disputed tax year with either the County Board of Taxation or the Tax Court. Since Constable did not timely appeal the assessments for years 1991 through 1994, Bayonne contends that the bankruptcy court may not award a

refund because Constable did not properly (*i.e.*, timely) request a refund.

On the other hand, Constable argues that the phrase "properly requests" refers only to the exhaustion of administrative remedies and does not bar a bankruptcy court from considering the issue of a refund where the taxpayer has not "timely" filed a refund request with the appropriate state authority.

Judge Winfield appreciated that the key to understanding this provision is interpreting what Congress meant by the expression "properly requests." *See Constable Terminal Corp. v. City of Bayonne (In re Constable)*, 222 B.R. 734, 737 (D.N.J. 1998). Upon concluding that this term is susceptible to more than one meaning, Judge Winfield referred to the legislative history of the statute and Judge Queenan's opinion in *Cumberland Farms, Inc. v. Town of Barnstable, et al. (In re Cumberland Farms)*, 175 B.R. 138 (D.Mass.1994), which provided an indepth analysis of the legislative history and policy reasons underlying the provision. *See id.* at 737–738. Based upon both the legislative history and the underlying policy reasons of 11 U.S.C. § 505(a)(2)(B), Judge Winfield concluded that Constable's failure to comply with the state procedural requirements for obtaining refunds of taxes precluded the bankruptcy court from ordering a refund, even as an offset or counterclaim, to a proof of claim filed by the taxing authority in a bankruptcy case.

This Court is satisfied that the legislative history, the underlying policy reasons and the vast amount of case law clearly support the conclusions reached by Judge Winfield. Nonetheless, the Court will address a few key points.

▇▇ First, one court succinctly stated, and this Court concurs, that "the adverb 'properly' [in § 505(a)(2)(B) ] connotes correctness and dictates conformity with the governmental unit's procedures. If the statute did not have this meaning, the word [']properly['] would be superfluous."

*In re St. John's Nursing Home, Inc.*, 154 B.R. 117, 125 (D.Mass.1993), *aff'd*, 169 B.R. 795 (D.Mass.1994). Here, conformity with the governmental unit's procedures would have been to file a tax appeal on or before April 1st of the disputed tax year with either the County Board of Taxation or the Tax Court, pursuant to N.J.S.A. § 54:3–21. Since it is undisputed that Constable did not timely file the tax appeal (for whatever reasons), Constable is barred from attempting to seek the refund in the bankruptcy court.

Notably, other courts have construed the phrase "properly requests" to mean the filing of an application for a refund with the governmental unit within the time period required by state law. *See e.g., Roberts v. Sullivan County, Tennessee (In re Penking Trust)*, 196 B.R. 389, 396 (E.D.Tenn.1996); *Great Bay Power Corp. v. Town of Seabrook, NH (In re EUA Power Corp.)*, 184 B.R. 631, 634 (D.N.H. 1995); *In re Cumberland Farms*, 175 B.R. 138, 142 (D.Mass.1994); *In re St. John's Nursing Home, Inc.*, 154 B.R. 117, 125 (D.Mass.1993), *aff'd*, 169 B.R. 795 (D.Mass. 1994). *See also In the Matter of Qual Krom South, Inc.* 119 B.R. 327, 329 (S.D.Fla.1990) (holding that a taxpayer who failed to file a claim for a refund within the time period prescribed by federal law could not sue to recover tax); *In re Dunhill Medical, Inc.*, No. 92–37700, 1996 WL 354696, at *7 (Bankr.D.N.J.1996) (agreeing with Judge Queenan's decision in *In re Cumberland* and "the majority of courts" that "courts are without jurisdiction to adjudicate a claim for a refund unless it has been timely filed.").

Second, this Court disagrees with the arguments posited by Constable relating to the significance of the Senate's version of § 505 and its impact on the meaning of the phrase "properly requests." Constable seeks to convince the Court that a review of the legislative history supports its argument that the bankruptcy court can adjudicate the refund issue, at least as an offset or counterclaim to the request for

payment by the governmental unit. It should be noted, however, that Congress did not adopt the Senate's draft of § 505. Although the language contained in the Senate's version of § 505 was more favorable to Constable's argument because it provided that a bankruptcy court could issue a refund to a debtor if it resulted from an "offset or counterclaim," the final version of § 505, which was deemed a "compromise" by Congress, contains *no* language which carves out an exception for refunds based on an offset or counterclaim to a claim or request for payment by a governmental unit.

Finally, courts have noted that the 1978 Bankruptcy Code was the first time bankruptcy courts were granted any power to determine the legality of a *paid* tax claim. Until that point in time, the bankruptcy court's jurisdiction was limited to adjudication of *unpaid* tax liabilities. *See In re Cumberland Farms*, 175 B.R. 138, 141 (D.Mass.1994). Accordingly, this Court agrees that "[i]f Congress intended to significantly extend the bankruptcy court's jurisdiction to include the redetermination of paid taxes by preempting the state law time limitations ... it would have more clearly expressed its intent to do so." *In re EUA Power Corp.*, 184 B.R. 631, 634–35 (D.N.H.1995). *See also (In re Penking Trust)*, 196 B.R. 389, 396 (E.D.Tenn.1996).

In sum, the Court agrees with Judge Winfield's analysis that the phrase "properly requests" means the timely filing of an application for a refund with the governmental unit from which such refund is claimed.[1] Under New Jersey law, a request for a refund is triggered by the filing of a timely tax appeal. Since there is no dispute that Constable failed to file a timely tax appeal for the years 1991–1994, Constable is precluded from obtaining a refund in this manner.

## CONCLUSION

For the foregoing reasons, the Order of Bankruptcy Judge Novalyn L. Winfield

dated July 28, 1999 precluding the Bankruptcy Court from granting tax refund requests that are untimely under state law is **AFFIRMED**. Accordingly, this case is **CLOSED**.

---

1. Likewise, the Court is satisfied that the distinctions made by the Bankruptcy Court Judge with respect to those cases relied upon by Constable are correct.