Accordingly, judgment will be entered for defendant.

**Margaret HODGES, wife of/and Wilson P. Abraham, Plaintiffs,**

v.

**UNITED STATES of America, Defendant.**

**No. 75–2482.**

United States District Court, E. D. Louisiana.

Nov. 19, 1976.

Peter J. Butler, New Orleans, La., for plaintiffs.

Leonard P. Avery, Asst. U. S. Atty., New Orleans, La., Fred W. Schwendemann, III, U. S. Dept. of Justice, Washington, D. C., Jack D. Warren, U. S. Dept. of Justice, Washington, D. C., for defendant.

## FINDINGS OF FACT AND CONCLUSIONS OF LAW

CASSIBRY, District Judge.

The Complaint filed by Margaret Hodges, wife of/and Wilson P. Abraham, plaintiffs, against the United States of America, defendant, seeking the refund of taxes paid by the plaintiffs to satisfy 50 per cent of the deficiency taxes and deficiency interest assessed against Paula Construction Company for the taxable periods 1964 and 1965, came on for hearing on September 30, 1976, and after having heard the witness who testified at said hearing, and after having studied the exhibits which were admitted into evidence, and after having read the memoranda filed by counsel, the Court now does make the following:

### FINDINGS OF FACT

1. Under date of June 29, 1973, the Internal Revenue Service addressed

two letters to Paula Construction Company (a corporation), demanding that purported federal income taxes, with accrued interest, and penalties thereon, be paid by it within ten days of the date of the letters; one letter involved its calendar year ended December 31, 1965, and the other letter involved its calendar year ended December 31, 1966, and the amount of the demands were, respectively, $23,247.72 and $21,415.69.

2. Wilson P. Abraham received the two letters referred to above, and contacted Julian P. Brignac, his tax accountant. Brignac is both an attorney and a certified public accountant, and was, at all pertinent times, a partner in the New Orleans office of Peat, Marwick, Mitchell & Co., a certified public accounting firm.

3. For the calendar years 1965, 1966, 1967, and 1968, Paula Construction Company reported its income and expenses as a Subchapter S corporation, that is, its shareholders reported the income and expenses realized by the corporation on their personal income tax returns. At all pertinent times, plaintiffs and one Anthony Abraham, were the sole shareholders of this corporation. Thereafter, the Internal Revenue Service audited the federal income tax returns of Paula Construction Company, and determined that the corporation was not qualified to report its income and expenses under Subchapter S for the years stated above. This determination was affirmed by the Tax Court and, subsequently, by the United States Fifth Circuit Court of Appeal.

4. Therefore, Paula Construction Company was the entity which owed whatever income taxes were due from its operations for the years 1965 through 1968. However, in 1973, when the Internal Revenue Service made demand upon Paula Construction Company to pay income taxes purportedly due by it for the years 1965 and 1966, the corporation had no assets, whatsoever, as all of its assets were previously distributed to plaintiffs and Anthony Abraham, the sole shareholders of the corporation.

5. Brignac then informed Wilson P. Abraham, plaintiff, that he was liable for one-half of the taxes, and accrued interest and penalties, assessed against Paula Construction Company for 1965 and 1966, as a transferee of the corporation, up to the value of the amount of assets which he received from the corporation. Plaintiffs received from Paula Construction Company assets worth more than one-half of the amount of taxes, and accrued interest and penalties, which the Internal Revenue Service was then demanding from the corporation.

6. Brignac then informed Wilson P. Abraham, plaintiff, that since he was a transferee of Paula Construction Company, the Internal Revenue Service could formally assess the taxes due by Paula Construction Company against him, and collect said taxes by filing a lien against the assets of plaintiffs. In 1973, Wilson P. Abraham was engaged in the construction business and was borrowing money from lending institutions in conjunction therewith. Under these circumstances, it was undesirable for him to permit collection procedures, such as the filing of the lien against his assets, to be initiated against him by the Internal Revenue Service for the collection of federal income taxes.

7. As a consequence of this conversation, plaintiff, Wilson P. Abraham, issued his personal check No. 4951 dated July 13, 1973, in the amount of $22,331.71, which check was payable to the order of the Internal Revenue Service. The amount of this check was equal to one-half of the income

taxes, and accrued interest and penalties thereon, demanded from Paula Construction Company by the Internal Revenue Service pursuant to its letters of June 29, 1973.

8. On or about the date of the issuance of the check referred to above (July 13, 1973), Brignac contacted one Vernon Kennedy, then head of the Collection Department of the New Orleans office of the Internal Revenue Service, and informed him that Paula Construction Company no longer had any assets, whatsoever, but that plaintiffs and Anthony Abraham received the assets of the corporation some time prior to 1973. Brignac informed Kennedy that it was clear to him that the assets of plaintiffs and Anthony Abraham could be subjected to lien for the payment of these taxes, as they were transferees of Paula Construction Company. Brignac informed Kennedy that Wilson P. Abraham, plaintiff, did not want the Internal Revenue Service to initiate any collection procedures against him, and that he would pay one-half of the total taxes, and accrued interest and penalties thereon, due by Paula Construction Company, provided that a formal assessment would be made against plaintiffs, reflecting their liability for these taxes as transferees of Paula Construction Company. Kennedy agreed to this procedure, and plaintiffs' personal check was either personally delivered to Kennedy by Brignac, or Brignac mailed the check to the Internal Revenue Service, pursuant to his agreement with Kennedy.

9. Peat, Marwick, Mitchell & Co. subsequently prepared the federal income tax return for plaintiffs for the calendar year 1973, and deducted as an expense that portion of the $22,-331.71 payment referred to above, which represented interest in the amount of $7,535.66. Some time thereafter, an office audit was conducted of plaintiffs' 1974 federal income tax return by the Internal Revenue Service, at which Brignac attended as the representative of plaintiffs. At this office audit, the Internal Revenue Service agent requested of plaintiffs proof that a formal assessment had been made against them by the Internal Revenue Service, reflecting their liability for the amount paid by them ($22,-331.71), as transferees of Paula Construction Company. No document could be produced on behalf of plaintiffs which reflected the taxes due by Paula Construction Company, against plaintiffs, or their assets, as transferees of Paula Construction Company.

10. Thereafter, on September 23, 1974, the Internal Revenue Service issued a report to plaintiffs, disallowing the deduction claimed by them for that portion of the $22,331.71 payment which represented interest expense. On page 4 of that report, the explanation afforded to plaintiffs by the Internal Revenue Service for the disallowance of this interest expense was as follows:

"150. A debt owed by a corporation is not the legal debt of its stockholders. Therefore, the interest you paid on the debt is not your legal liability, and is not deductible."

11. The report of the Internal Revenue Service dated September 23, 1975, addressed to plaintiffs reflecting the reason for the disallowance of this interest expense, is consistent with the testimony given by Brignac relevant to this issue. Thereafter, a claim for refund was filed on behalf of plaintiffs with the Internal Revenue Service, requesting the return to plaintiffs of the $22,331.71 payment paid by them to the Internal Revenue Service under date of July 13, 1973. The basis of the claim for refund is fully set forth therein, and

plaintiffs asserted that since the Internal Revenue Service held that they were not liable for the taxes purportedly due by Paula Construction Company, which plaintiffs paid, then the Internal Revenue Service should return this payment to them.

12. Thereafter, on March 21, 1975, the Internal Revenue Service addressed a communication to plaintiffs, which, in pertinent part, is as follows:

"We have reviewed your claim for a refund of income tax in the amount of $22,331.71 for the tax period ended December 31, 1966. We are sorry, but it cannot be allowed.

"According to Internal Revenue Service policy, the taxpayer is the only one to whom a refund payment can be made. Since you are not the taxpayer whose account is in question, your claim for 1965 and 1966 is not valid."

13. The instant action was filed in this Court on August 8, 1975, by plaintiffs against the United States of America, seeking the return of the sum of $22,331.71 paid by plaintiffs to the Internal Revenue Service on July 13, 1973.

14. Thereafter, answer was filed on behalf of the defendant, and plaintiffs requested that this matter be placed on the trial docket of this Court.

15. A pre-trial conference was held in this matter on Thursday, March 4, 1976, at which time a formal written pre-trial order was signed by counsel for plaintiffs, the defendant, and by the Court. This pre-trial order was formulated in conformity with a notice issued by the Court on October 21, 1975, which notice reflected the purpose of the pre-trial conference, and the content to be included in the pre-trial order.

16. Paragraph 6(b) of the pre-trial order contained a brief summary of the material facts claimed by the defendant, as follows:

"On January 29, 1973, deficiency income taxes, penalties, and deficiency interest in the total amount of $44,663.41 were assessed against Paula Construction Company for the calendar years 1965 and 1966. On July 17, 1973, payments of the full amounts of the foregoing assessments were credited against the liabilities of Paula Construction Company for 1965 and 1966. Margaret H. and Wilson P. Abraham contend that they paid 50 (50%) percent, or $22,331.71, of the total liability assessed against Paula Construction Company for 1965 and 1966. If, in fact, they made such payment, they did so as mere volunteers, since the Government had made no effort to levy upon any assets of Paula Construction Company which may have been held by the individuals, as transferees of the corporation, or otherwise. Therefore, Margaret H. and Wilson P. Abraham were not the taxpayers against whom the deficiencies at issue here were assessed, nor were they more than mere volunteers who elected to pay a portion of the tax liability of their presumably defunct corporation. On these facts, those individuals have no standing to bring this civil action."

17. Moreover, in the pre-trial order, the defendant contested the jurisdictional basis for this action, relying upon its contention set forth in Paragraph 6(b), above.

18. When the trial of this matter commenced on Thursday, September 30, 1976, the sole defense of the Government to plaintiffs' claim was set forth in the formal pre-trial order, which was consistent with the answer it filed in this matter, and was also consistent with the position previously asserted by the Internal Revenue Service, that is, since the purported taxes due by Paula Construction Company for the years 1965 and

1966 were assessed against the corporation, and were never assessed against plaintiffs, the plaintiffs had no standing to sue for the recovery of those taxes, since when plaintiffs paid the taxes, they were mere "volunteers" who had no legal obligation to pay the taxes; and consequently, this Court has no jurisdiction of this suit.

19. The Court accepts the testimony given by Julian P. Brignac as true. The Court notes that the defendant did not call any witness to the stand to controvert his testimony.

20. The Court further finds that on or about July 13, 1973, the Internal Revenue Service knew that Paula Construction Company then had no assets, and that plaintiffs admitted, through their representative, that they were transferees of the corporation. The Court further finds that the Internal Revenue Service could then have issued a formal assessment to plaintiffs, as transferees of Paula Construction Company, for the federal income taxes, and accrued interest and penalties thereon, purportedly then owed by the corporation for the years in question. The Internal Revenue Service produced no evidence whatsoever reflecting that it issued any such transferee assessment for the years 1965 and 1966; in fact, the evidence is clearly to the contrary.

21. Simply stated, the Internal Revenue Service slept on its rights and then attempted to take advantage of its failure to act in issuing the transferee assessment, in order to deny plaintiffs a deduction for that portion of their $22,331.71 payment which represented interest expense. Furthermore, the defendant is now attempting to take advantage of the failure of the Internal Revenue Service to issue a formal assessment against plaintiffs, as transferees, by asserting that since no formal assessment was ever issued to plaintiffs, as transferees, they have no standing to sue for the return of income taxes which they paid as transferees of Paula Construction Company.

22. The Court finds that the Internal Revenue Service, through its own fault, failed to issue a notice of assessment against plaintiffs, as transferees of Paula Construction Company, for the years 1965 and 1966, and consequently, that plaintiffs, on July 13, 1973, or at any time thereafter, had no legal liability for the payment of any taxes purportedly due by Paula Construction Company for those years. The Court further finds that those taxes were erroneously paid by plaintiffs to the Internal Revenue Service, and that they are now entitled to recover from the defendant the amount of the taxes, plus applicable interest thereon.

## CONCLUSIONS OF LAW

1. The sole defense of defendant to the claim of plaintiffs asserted herein, is set forth in defendant's answer to the complaint and in Paragraphs 4 and 6(b) of the pre-trial order dated March 4, 1976. Essentially, defendant alleges that since the purported taxes due by Paula Construction Company for the years 1965 and 1966 were assessed against the corporation, and were never assessed against plaintiffs, the plaintiffs had no standing to sue for the recovery of the taxes, since, when plaintiffs paid the taxes, they were merely "volunteers" who had no legal obligation to pay the taxes; and consequently, this Court has no jurisdiction of this suit.

2. However, this defense has no merit. A transferee of a corporation, who pays taxes purportedly due by the transferor corporation, prior to the actual assessment of the corporate taxes against the transferee, such as

in the instant case, has standing to sue for a refund of said taxes. The potential liability of a transferee, under these circumstances, removes him from the status of a "volunteer" or "interloper." *Campbell Farming Corporation v. United States* (1955), 132 F.Supp. 216, 132 Ct.Cl. 341.

3. Consequently, this Court has jurisdiction over this matter pursuant to Title 28, United States Code, Section 1346(a).

4. Since the plaintiffs have standing to recover the $22,331.71 payment paid by them on July 13, 1973, prior to the assessment of those corporate taxes against them as transferees, and since the defendant, through its own neglect, failed to ever issue an assessment against plaintiffs for the payment of those taxes, as transferees of Paula Construction Company, the plaintiffs, on July 13, 1973, or at any time thereafter, were never legally liable for the payment of these taxes.

5. The Court concludes that the $22,331.71 payment made by plaintiffs on July 13, 1973, was erroneously made by them, and that since plaintiffs, on July 13, 1973, or at any time thereafter, were never legally liable for the payment of the taxes, they are now entitled to a judgment against the defendant for the return of the payment, plus applicable interest thereon.

6. The defendant has urged in Proposed Findings of Fact and Conclusions of Law submitted after the trial of this case several arguments that are not germane to the issues in this case as developed in the answer and pre-trial order, and they are therefore regarded as not relevant to the issues of this case.